IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROBERT WHITE, *et al.*, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:17-cv-01233-TMP |
| ) | |
| NORTHWEST ALABAMA ) | |
| TREATMENT CENTER, INC., ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION and ORDER**

This matter is before the court on the Defendants' Motion for Summary Judgment. (Doc. 8).[1] The defendant, Northwest Alabama Treatment Center, Inc. ("NWATC"), filed its motion on September 22, 2017, seeking to dismiss the plaintiff's complaint in its entirety. Under the Consolidated Omnibus Budget Reconciliation Act of 1984 ("COBRA"), 29 U.S.C. §§ 1161-1169 (2017), the defendant argues that the small employer exception bars the plaintiff's claim because NWATC does not employ more than twenty full-time employees. 19 U.S.C. § 1161(b). The motion has been fully briefed, and the parties have

---

[1] Originally, the Defendant filed a motion to dismiss supported by evidence outside of the pleadings. Because the evidence did not qualify for the incorporation by reference doctrine, the court converted the motion to dismiss into a motion for summary judgment and allowed the plaintiffs to conduct limited discovery to respond to the motion. (Doc. 21).

consented to dispositive jurisdiction by a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c). (Doc. 16).

I.  **SUMMARY JUDGMENT STANDARD**

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met its burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions,

answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting former Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court "shall" grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The substantive law will identify which facts are material and which are irrelevant. Anderson, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at

3

251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n. 11 (1983).

However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The evidence supporting a claim must be "substantial," Marcus v. St. Paul Fire and Marine Ins. Co., 651 F.2d 379 (5th Cir., Unit B, 1981); a mere scintilla of evidence is not enough to create a genuine issue of fact.  Young v. City of Palm Bay, 358 F.3d 859, 860 (11th Cir. 2004); Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1249-50 (11th Cir. 2004).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff.  Anderson, 477 U.S. at 254; Cottle v. Storer Communications, Inc., 849 F.2d 570, 575 (11th Cir. 1988).  Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255.  The non-movant need not be given the benefit of every

inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n. 12 (11th Cir. 1988).

## II. FACTS

Viewing the facts favorably to the non-moving plaintiff, the following appear be undisputed. The plaintiff, Robert White, opened NWATC in 1993 and, at the time of his termination, served as the President and Program Sponsor. Part of his duties included the power to employ, manage, and terminate personnel. On February 18, 2017, NWATC terminated White's employment, but White "was not terminated for gross misconduct." (Doc. 1, ¶ 19). NWATC maintained a group health plan that insured both White and his wife. However, NWATC did not notify White or his wife of their rights to continue coverage under COBRA following his termination.

According to White, NWATC employed both full-time and part-time employees. He states by affidavit that:

> The position or job classification of the employee often determined whether the employee was considered full-time or part-time. Most full-time employees were salaried while part-time employees were paid hourly. . . . A 40-hour work week has never been used to determine whether an employee was full-time or part-time.

(Doc. 23-1 at 3, ¶ 6).[2] Under the Personal Time Off ("PTO") policy, NWATC treats full-time employees differently than part-time employees. Part-time employees who work between "at least 20 hours but less than 32 hours per week" qualify for PTO if certain requirements are met. (Doc. 23-1 at 8). Furthermore, on the PTO policy provided by the defendant to White, a handwritten notation states that an employee by the name of "David [wa]s working full-time" at some point in 2016. (Doc. 23-1 at 8).[3] Additionally, White identifies at least twenty employees who were employed full-time during at least part of the 2016 calendar year.

## III. DISCUSSION

Under COBRA, employers that sponsor a group health plan must allow "each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event . . . to elect, within the election period, continuation coverage under the plan." 29 U.S.C. § 1161(a). After a qualifying event occurs, the plan's administrator must notify the qualified beneficiary of the beneficiary's right to elect continuation coverage. § 1166(a)(4). However, § 1161(a) does not "apply to

---

[2] NWATC argues that, under its unwritten employment practice, an employee must work 40 hours per week to qualify for full-time status. Because there is a fact dispute on this point, the court must view the fact in the light most favorable to the non-movant, White. As will be explained more fully below, it does not appear to the court that NWATC's employment practice requires employees to work 40 hours per week to qualify for full-time status.

[3] NWATC argues that it does not employ any full-time employees. Because there is a fact dispute on this point, the court must view the fact in the light most favorable to the non-movant, White. As will be explained more fully below, NWATC hired full-time employees despite its assertions to the contrary.

any group health plan for any calendar year if all employers maintaining such plan normally employed fewer than 20 employees on a typical business day during the preceding calendar year." § 1161(b).

Although the Eleventh Circuit has not authoritatively adopted a test to determine when an employer employs more than 20 employees on "a typical business day," the Northern District of Georgia has adopted the Department of Treasury's regulation to make that determination. See, e.g., Giddens v. University Yacht Club, Inc., No. Civ.A. 2:05-cv-19-WC, 2006 WL 508056, at *3-7 (N.D. Ga. March 1, 2006). The Treasury Department's regulation ("Regulation 54") states as follows:

> Q–5: What is a small-employer plan?
>
> A–5: (a) Except in the case of a multiemployer plan, a small-employer plan is a group health plan maintained by an employer (within the meaning of Q&A–2 of this section) that normally employed fewer than 20 employees (within the meaning of paragraph (c) of this Q&A–5) during the preceding calendar year. . . .
>
> (b) An employer is considered to have normally employed fewer than 20 employees during a particular calendar year if, and only if, it had fewer than 20 employees on at least 50 percent of its typical business days during that year.
>
> (c) All full-time and part-time common law employees of an employer are taken into account in determining whether an employer had fewer than 20 employees; however, an individual who is not a common law employee of the employer is not taken into account. Thus, the following individuals are not counted as employees for purposes of

7

this Q&A–5 even though they are referred to as employees for all other purposes of §§ 54.4980B–1 through 54.4980B–10—

> (1) Self-employed individuals (within the meaning of section 401(c)(1));
>
> (2) Independent contractors (and their employees and independent contractors); and
>
> (3) Directors (in the case of a corporation).

(d) In determining the number of employees of an employer, each full-time employee is counted as one employee and each part-time employee is counted as a fraction of an employee, determined in accordance with paragraph (e) of this Q&A–5.

(e) An employer may determine the number of its employees on a daily basis or a pay period basis. The basis used by the employer must be used with respect to all employees of the employer and must be used for the entire year for which the number of employees is being determined. If an employer determines the number of its employees on a daily basis, it must determine the actual number of full-time employees on each typical business day and the actual number of part-time employees and the hours worked by each of those part-time employees on each typical business day. Each full-time employee counts as one employee on each typical business day and each part-time employee counts as a fraction, with the numerator of the fraction equal to the number of hours worked by that employee and the denominator equal to the number of hours that must be worked on a typical business day in order to be considered a full-time employee. If an employer determines the number of its employees on a pay period basis, it must determine the actual number of full-time employees employed during that pay period and the actual number of part-time employees employed and the hours worked by each of those part-time employees during the pay period. For each day of that pay period, each full-time employee counts as one employee and each part-time employee counts as a fraction, with the numerator of the fraction equal to the number of hours worked by that employee during that pay period and the denominator equal to the number of hours that must be worked during that pay period in order to be considered a full-time

employee. The determination of the number of hours required to be considered a full-time employee is based upon the employer's employment practices, except that in no event may the hours required to be considered a full-time employee exceed eight hours for any day or 40 hours for any week.

26 C.F.R. § 54.4980B-2.

In this case, a genuine issues of material fact exists concerning NWATC's employment practices (namely, how many hours an employee must work to be considered a full-time employee of NWATC) and whether NWATC employed more than 20 full-time employees during at least half of its pay periods. 26 C.F.R. § 54.4980B-2. NWATC's employment practice is not entirely clear to the court because the evidence cuts both ways. However, the evidence in the record, when viewed in a light most favorable to White, does not support NWATC's assertions that it required employees to work 40 hours per week to be considered full-time employees or that it employed fewer than 20 full-time employees more than half of its pay periods.

First, NWATC alleges that "employees must work at least 40 hours per week in order to be considered a full-time employee[,]" (Doc. 9-1 at 3, ¶ 8). Additionally, NWATC has alleged numerous times, in its papers and during oral argument, that it does not employ *any* full-time employees. However, the evidence does not support these broad assertions. NWATC admits that none of its employees work 40 hours per week. (Doc. 9-1 at 3, ¶¶ 8, 9; see also doc. 9-1 at 6-

9

7). In fact, NWATC asserts that none of its salaried employees worked more than 28 hours per week. (Doc. 9-1 at 3, ¶ 10). In his affidavit, plaintiff White asserts:

> The position or job classification of the employee often determined whether the employee was considered full-time or part-time. Most full-time employees were salaried while part-time employees were paid hourly. . . . A 40-hour work week has never been used to determine whether an employee was full-time or part-time.

(Doc. 23-1 at 3, ¶ 6). Furthermore, White has identified twenty-one employees who were considered full-time employees based upon his personal knowledge as the former President and Program Sponsor of NWATC. While White himself does not count as an employee for the purposes of the Regulation 54 formula, White additionally identified himself as a former full-time employee of NWATC. Importantly, on a document produced by NWATC to White,[4] which contains NWATC's PTO policy, a handwritten notation appears: "David is working full-time . . . 10/07/16." (Doc. 23-1 at 8).

Clearly evidence exists suggesting that NWATC employed full-time employees, who worked fewer than 40 hours per week. All of the individuals identified by White in his affidavit worked fewer than 40 hours per week yet were

---

[4] During oral argument, NWATC indicated that it did not disclaim the authenticity of the document in question when it produced the document to White.

considered full-time employees.[5] Even disregarding the individuals identified by White and despite NWATC's contention that the existence of one full-time employee ("David") does not create a genuine issue of material fact (doc. 24 at 4-5), the fact that NWATC employed at least one full-time employee undercuts its assertion that "employees must work at least 40 hours per week in order to be considered a full-time employee." (Doc. 9-1 at 3, ¶ 8). Although it is not clear who "David" is, by examining the defendant's original Regulation 54 chart (doc. 9-1) for any individual with the given name of David or any individual with the initial "D.," it is clear to the court that none of these individuals worked at least 40 hours per week. NWATC did not employ an individual with the given name of David. Individuals with the initial "D." include: Carlos D. Richardson, who worked 60.67 hours per semi-monthly pay period[6] as a salaried employee (doc. 9-1 at 6-7, 8); Paul D. Sanford, who worked fewer than 40 hours per week as an hourly employee (doc. 9-1 at 6-7); Quiawanna D. Dallas, who worked fewer than 40 hours per week as an hourly employee (doc. 9-1 at 6-7); and Ryan D. Scott, who worked fewer than 40 hours per week as an hourly employee (doc. 9-1 at 6-7).[7]

---

[5] Admittedly, Julia F. Faison/Allen, Martha C. Moore, and Shirley A. Cummings all occasionally worked greater than 40 hours per week, but this appears to be overtime.

[6] It appears to be undisputed that the employees were paid twice a month.

[7] There are no other employees with the initial "D." Inferentially, "David" must be one of these individuals if NWATC has identified each of the employees working for NWATC. If "David" is not one of these individuals, then NWATC has not identified all of NWATC's

The existence of a full-time employee named "David", who was either Carlos D. Richardson, Paul D. Sanford, Quiawanna D. Dallas, or Ryan D. Scott, undercuts NWATC's assertion that "employees must work at least 40 hours per week in order to be considered a full-time employee." (Doc. 9-1 at 3, ¶ 8). Because "David," a full-time employee, necessarily had to work less than 40 hours per week, NWATC did not require employees to work 40 hours per week to be considered full-time employees.

NWATC has not produced evidence of any full-time employees working 40 hours per week, and this allows the court to infer that full-time employees (including "David") worked fewer than 40 hours per week. At this stage, on a summary judgment motion, NWATC possessed the burden of producing evidence demonstrating that the following fact was not in dispute: that "employees must work at least 40 hours per week in order to be considered a full-time employee."

---

employees, which necessarily means that the chart is not complete and is unreliable. An incomplete and unreliable chart cannot demonstrate whether NWATC employer 20 or more full-time employees during at least half of its pay periods, necessary to support summary judgment.

Furthermore, NWATC cannot now argue that "David" does not exist given the email between NWATC employees who discuss "David" taking over Martha Moore's job responsibilities in 2016. (Doc. 23-1 at 6). During oral argument, NWATC indicated that it did not disclaim the authenticity of the email in question when it produced the email to White. Therefore, NWATC must have employed an individual by the name of "David."

Even if "David" is not any of the individuals on the chart, the court may reasonably infer either that "David" worked less than 40 hours per week when compared to the hours worked by other employees or that "David" worked 40 hours per week. The court simply does not know how many hours "David" worked per week, and NWATC has not produced definitive evidence one way or the other.

(Doc. 9-1 at 3, ¶ 8).  Here, NWATC cannot rely on an absence of evidence to meet its burden when some evidence in the record suggests that NWATC hired full-time employees who worked less than 40 hours per week.

Second, in the PTO policy produced by the defendant, NWATC draws a distinction between part-time and full-time employees for the purpose of qualifying for and accruing PTO.  (Doc. 23-1 at 8).  Full-time employees are eligible to accrue PTO without qualification, and full-time employees accrue the maximum amount of PTO.  (Doc. 23-1 at 8).  Part-time employees are eligible to accrue PTO only if they are "regularly scheduled to work an average of at least 20 but less than 32 hours per week[,]" and part-time employees accrue "half the maximum time . . . ."  (Doc. 23-1 at 8).  A reasonable inference from the PTO policy indicates that employees who work more than 32 hours per week are considered full-time employees.  However, it is not clear to the court whether an employee must work greater than 32 hours per week to qualify for full-time PTO benefits; it is conceivable, given White's testimony the an employee's full-time status turned on whether he was salaried or not, that an employee may be considered full-time despite working less than 32 hours per week.  Nonetheless, the PTO policy appears to be the strongest evidence of NWATC's employment

practice[8] and persuasively undercuts NWATC's assertion that "employees must work at least 40 hours per week in order to be considered a full-time employee." (Doc. 9-1 at 3, ¶ 8).

Finally, the payroll records relied upon by NWATC fail to affirmatively demonstrate NWATC's employment practice. The payroll records themselves do not denote who is considered a full-time or a part-time employee; however, the payroll records do denote who is considered an hourly or salaried employee. NWATC contends that it does not consider salaried employees "to be full-time employees because they do not work 40 hours per week." (Doc. 9-1 at 3, ¶ 11). Conversely, White testified by affidavit that "[m]ost full-time employees were salaried while part-time employees were paid hourly[,]" but ultimately, he contends that "[t]he position or job classification of the employee often determined whether the employee was considered full-time or part-time." (Doc. 23-1 at 3, ¶

---

[8] However, without evidence demonstrating how each NWATC employee accrued PTO, the court cannot know definitively which employees are considered full-time employees and which employees are considered part-time employees. It appears that full-time and part-time employees can be identified by the rate at which they accrued PTO. The parties can classify each employee as a full-time employee if that employee accrued PTO at the maximum rate with respect to the employee's length of creditable service. The same notion applies to part-time employees. (See Doc 23-1 at 8 (comparing length of creditable service and accrual per pay period and noting that part-time employees accrue at half the rate of full-time employees)). Once full-time employees are identified by this method, it is conceivable that a proper Regulation 54 denominator can be calculated by averaging the hours worked by full-time employees. The average of the full-time employees' hours would equal "the number of hours required to be considered a full-time employee . . . based upon the employer's employment practices." 26 C.F.R. § 54.4980B-2. Then to determine the fractional amount of each part-time employee, each part-time employee's time would be divided by this newly calculated denominator, which more accurately reflects NWATC employment practice.

6). On this point, the parties dispute the classification of salaried employees. Therefore, the court must view this dispute in a light most favorable to White, the non-movant: "[m]ost full-time employees were salaried while part-time employees were paid hourly." (Doc. 23-1 at 3, ¶ 6). Any employee who was denoted as salaried on the payroll records likely was considered to be a full-time employee under NWATC's practice.

Thus, NWATC has not shown that it is undisputed that its employment practice requires an employee to work 40 hours per week in order to be considered a full-time employee. 26 C.F.R. § 54.4980B-2. Because a genuine issue of material fact exists as to NWATC's employment practice, the denominator used by NWATC in calculating the fractional amount of a part-time employee pursuant to Regulation 54 is incorrect and, at this point, unknown. Without knowing the number of hours required to be considered a full-time employee (*i.e.*, without plugging the correct denominator into the Regulation 54 formula), neither NWATC nor the court can determine the number of full-time employees employed by NWATC when using the Regulation 54 formula.[9] Therefore, the court cannot

---

[9] Neither the original Regulation 54 chart (doc. 9-1 at 6-7) nor the updated chart supplied by NWATC (doc. 24-1) is undisputed evidence. The original chart used a denominator ("hours in pay period") that did not accurately reflect NWATC's employment practice. NWATC did not require employees to work 40 hours per week to qualify for full-time status. NWATC cannot reduce each part-time employee to a fraction using a 40-hour-per-week denominator that does not accurately reflect the actual number of hours required to be considered a full-time employee. Simply put, the fractional amount will never be correct because NWATC did not reduce its employment practice to an objectively accurate denominator.

determine, as a matter of law, that NWATC has met its summary judgment burden in proving its employment practice or that NWATC "employed fewer than 20 employees on a typical business day" to warrant judgment as a matter of law. 29 U.S.C. § 1161(b). Two fact questions remain: (1) what is NWATC's employment practice with respect to classifying full-time and part-time employees and (2) how many full-time employees did NWATC employ during each pay period in 2016.

---

Furthermore, the updated chart continued to use the same 40-hour-per-week denominator as the original chart without appropriately scaling *each employee's* hours to use that denominator. While NWATC scaled the hours worked by employees identified by White as full-time employees to 86.67, NWATC failed to appropriately scale the number of hours worked by each of the remaining part-time employees to a comparable number (not necessarily 86.67). Effectively, NWATC did not scale each part-time employees' hours to what their comparable part-time hours would have been if full-time employees actually worked 40 hours per week. The fraction for a part-time employee who works 20 hours per week as compared to a full-time employee who works 32 hours per week ($20/32 = 0.625$) is greater than the fraction for a part-time employee who works 20 hours per week as compared to full-time employees who work 40 hours per week ($20/40 = 0.5$). Here, it is undisputed that none of NWATC's employees worked 40-hour weeks. Therefore, it is not appropriate to compare each part-time employee's actual number of hours to a hypothetical full-time employee who worked 40 hours per week. Without using a proper scale to continue applying the 40-hour-per-week denominator, NWATC failed to accurately compare part-time employees' hours to the number of hours required to be considered a full-time employee.

NWATC needed either to update the denominator in the original chart or appropriately scale the number of hours worked by each part-time employee in the updated chart. Therefore, in both charts, NWATC failed to reflect its actual employment practice.

## IV. CONCLUSION

Accordingly, because the court cannot decide NWATC's employment practice as a matter of law at this time, the motion for summary judgment (doc. 8) is DENIED WITHOUT PREJUDICE.

The defendant is DIRECTED to file an answer to the complaint within fourteen (14) days.

DONE this 13th day of August, 2018.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE